NOT FOR PUBLICATION                                            (Doc. Nos. 16, 17, 18)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                            :
JAMES McKEEVER,                             :
                                            :
          Plaintiff,                        :
                                            :      Civil No. 09-1175 (RBK/JS)
     v.                                     :
                                            :      **OPINION**
TOWNSHIP OF WASHINGTON,                     :
MAYOR and COUNCIL OF THE                    :
TOWNSHIP OF WASHINGTON, and                 :
MATTHEW LYONS,                              :
                                            :
          Defendants.                       :
_____      :

**KUGLER**, United States District Judge:

       This matter comes before the Court upon the motion for summary judgment by Defendants Township of Washington (the "Township"), Mayor and Council of the Township of Washington, and Matthew Lyons (Doc. Nos. 16, 17) pursuant to Federal Rule of Civil Procedure 56, and the cross-motion for summary judgment filed by Plaintiff James McKeever (Doc. No. 18). On March 16, 2009, Plaintiff brought claims against all Defendants under 42 U.S.C. § 1983. Plaintiff alleged that Defendants engaged in unlawful political discrimination, political retaliation, and violation of the Petition Clause. In addition, Plaintiff alleged that Defendants violated Article One of the New Jersey Constitution. For the following reasons, Defendants' motion is GRANTED, and Plaintiff's cross-motion is DENIED.

**I.     BACKGROUND**

       James McKeever is a registered Democrat and a resident of the State of New Jersey. McKeever resides in the Township of Washington, Gloucester County, New Jersey. In June

1989, the mayor of the Township, Mr. Gerald J. Luongo, appointed McKeever to the position of Director of Public Works.  McKeever held the position until the 2000 mayoral election, when Mayor Luongo was defeated by the challenger, Randee Davidson.  Upon assuming office, Mayor Davidson decided not to reappoint McKeever to the position of Director of Public Works.[1]

In response, McKeever filed a lawsuit against the Township, alleging, inter alia, political discrimination and violation of the New Jersey Tenure Statute, N.J. Stat. Ann. § 40A:9-154.6 ("NJTS").  McKeever v. Twp. of Washington, et al., 236 F. Supp. 2d 400, 403 (D.N.J. 2002).  During the litigation, both parties moved for summary judgment.  On August 7, 2002, Judge Rodriguez denied the Township's motion, and granted in part and denied in part McKeever's cross-motion.  Id.  On April 9, 2003, the parties entered into a settlement agreement (the "Settlement Agreement").  Paragraph 2 of the Settlement Agreement provides:

> McKeever also releases forever the Township, its officers, directors, employees, agents, predecessors, successors and assigns . . . from all actions, suits, claims and demands in law or equity, that he ever had, now has, or hereafter may have, resulting from anything which has happened up until now, including but not limited to, any matter, cause or claims relating in any way to his employment relationship, or the alleged termination of his employment relationship with Township, including but not limited to, any matter, cause or claims arising under the New Jersey Law Against Discrimination; Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1866; the Civil Rights Act of 1991; the Age Discrimination in Employment Act of 1967; the Federal Equal Pay Act; the New Jersey Wage Payment Law; the United States Constitution; the New Jersey State Constitution; the Employee Retirement Income Security Act; the Federal Americans with Disabilities Act; the Conscientious Employee Protection Act; the Federal False Claims Act; the Family and Medical Leave Act; the New Jersey Family Leave Act; Executive Orders 11246 and 11141; and any other federal, state or local law or ordinance and any common law claims under tort, contract, or any other theories now or hereafter recognized, and including but not limited to all claims that were asserted or that could have been asserted in the

---

[1] After a new mayor is elected in the Township, he or she must make appointments to key government posts, including the Director of Public Works.

> litigation filed by McKeever against the Defendants in the United States District Court for the District of New Jersey and captioned as Civil Action No. 01-cv-00712 . . . . The release recited in this paragraph shall include any and all claims which McKeever may have for any type of damages cognizable under any of the law referenced herein, including, but not limited to, any and all claims for compensatory damages, punitive damages, and/or attorney's fees.

(Settlement Agreement ¶ 2). Paragraph 18 of the Settlement Agreement provides:

> McKeever understands the terms of this Agreement, including the fact that he has permanently and irrevocably severed his employment relationship and/or his alleged employment relationship with Township and that this Agreement releases forever Defendants from any legal action he may bring, including but not limited to, any action arising from his employment relationship and the alleged termination of his employment relationship with Township. McKeever signs this Agreement of his own free will in exchange for the consideration to be given to him, which he acknowledges as adequate and satisfactory.

(Id. ¶ 18). In exchange for the above release, the Township agreed to pay McKeeveer $366,585.33. (Id. ¶ 4).

In 2004, Paul Moriarty was elected Mayor of the Township. In January 2005, Mayor Moriarity reappointed McKeever to the position of Director of Public Works. On January 2, 2005, the Township Council held a reorganization meeting to confirm McKeever's appointment. During the meeting, three councilmembers voted in favor of McKeever's appointment and councilmembers Steve Altamuro and Matthew Lyons voted against his appointment. When asked whether he did not support McKeever because of the lawsuit in 2001, Mr. Lyons replied: "I believe that was part of it, yes, but it was specific to the involvement of the entire [sic] and how the litigation was concluded, not for the institution of the suit, it had to do with the terms of the agreement of resolution." (Lyons and McKeever Dep. 28:1-16, June 7, 2010). In a sworn affidavit, Mr. Lyons also stated: "I voted against [Plaintiff's] appointment as Director of Public

3

Works because I was concerned whether terms of [Plaintiff's] April 4, 2003 Confidential Settlement Agreement and Release in the matter of McKeever v. Township of Washington, 236 F. Supp. 2d 400 (D.N.J. 2002), would entitle [Plaintiff]/preclude [Plaintiff] from being a 'tenured' employee per N.J.S.A. § 40A:9-154.6 upon his confirmation as the Director of Public Works." (Lyons Aff. ¶ 4). Notwithstanding Lyons's opposition, McKeever was confirmed and served as Director of Public Works until November 2008, when Mr. Lyons was elected mayor.

Mr. Lyons is a Democrat. Before selecting a new Director of Public Works, Mayor Lyons considered the following three individuals: (1) the Director of Public Works for the town of Audubon, New Jersey, (2) a Regional Administrator for the Department of Environmental Protection, and (3) Mr. Nicholas Pileggi, the CFO/General Manager of Riverwinds and White Oaks Golf and Tennis Facilities (the "Riverwinds") and former Business Administrator for Monroe Township, New Jersey.[2] In a sworn affidavit, Mayor Lyons stated that he wanted to fill the position of Director of Public Works with a person with business experience and financial training. McKeever had a limited college education and no accounting or financial training. (Lyons and McKeever Dep. 75:17-76:6, 89:24-25, June 7, 2010). After considering each of the candidates, Mayor Lyons selected Mr. Pileggi for the position. Prior to selecting Mr. Pileggi, Mayor Lyons discussed Mr. Pileggi's credentials with Jerry White, the former Business Administrator for West Deptford, New Jersey. Mr. White confirmed that Mr. Pileggi was a good supervisor and administrator. (McKeever and Lyons Dep. 36:4 - 37:1, June 7, 2010). At the time of his appointment, Mr. Pileggi was not a certified Public Works Manager.[3]

---

[2] In addition to his work experience in both the public and private sectors, Mr. Pileggi holds a Bachelor's Degree in Business Administration from LaSalle University.

[3] The record also demonstrates that in June 2008, Nick Petroni called Mr. Pileggi and asked whether he would be interested in a position as Business Administrator with the Township. Mr. Petroni is an auditor and long-time friend of Mr. Pileggi. Mr. Petroni was also a contributor to Mayor Lyons's campaign. (Lyons and McKeever Dep. 34:15-17, June 7, 2010). In the middle of November 2008, Mr. Petroni called Mr. Pileggi again to discuss openings

On March 16, 2009, McKeever brought a lawsuit against the Township, Mayor Lyons, and the Council of the Township of Washington. McKeever alleged that: (1) Defendant Lyons discriminated against him by not reappointing him to the position of Director of Public Works due to his political affiliations in violation of the First and Fourteenth Amendments of the United States Constitution and Article One of the New Jersey Constitution (Count One), (2) Defendant Lyons did not reappoint him to the position of Director of Public Works in retaliation for the lawsuit Plaintiff filed against Defendants in violation of the First and Fourteenth Amendments of the United States Constitution and Article One of the New Jersey Constitution, (Count Two), and (3) Defendants deprived Plaintiff of his due process rights by terminating his employment without a hearing in violation of the United States Constitution and the New Jersey Constitution.[4] On August 16, 2010, Defendants moved for summary judgment. On September 3, 2010, McKeever cross-moved for summary judgment. The parties submitted their respective briefs and the motion is ripe for review.

## II.   STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the

---

available in the Township. However, there is no evidence that Mr. Pileggi knew that Mr. Petroni was a contributor to Mayor Lyons's campaign, or that Mr. Petroni was involved in the political process.

[4] Plaintiff also brought three other claims related to Count Three. Count Four alleges that Defendants deprived Plaintiff of substantive and procedural due process under the U.S. Constitution and the New Jersey Constitution because he "was not afforded a hearing as provided by law," prior to his termination from the position of Director of Public Works. (Compl., at 7). Count Five alleges that "Defendants did not seek revocation of [Plaintiff's] license but summarily terminated [Plaintiff] from his position" in violation of N.J. Stat. Ann. 40A:9-154.6f. (Id. at 9). Finally, Count Six alleges that Defendants failed to follow the statutorily prescribed procedures for removing a tenured employee from the position of Director of Public Works, and failed to show good cause prior to terminating Plaintiff's employment with the Township. (Id. at 10).

nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmoving party may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province

of the fact-finder, not the district court.  BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

### A.  Due Process[5]

The Due Process Clause of the Fourteenth Amendment provides that no "State shall deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  In employment cases, in order to prove a due process violation, a plaintiff must show that he or she has a property interest in continued employment with a public agency.  Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1318 (3d Cir. 1997).  The source of that property interest may be a local ordinance, but must have "an independent source of entitlement found in State law."  McKeever, 236 F. Supp. 2d at 404 (citing Bishop v. Wood, 426 U.S. 341, 344 (1976); Brown v. Trench, 787 F. 2d 167, 170 (3d Cir. 1986)).

Plaintiff argues that he has a property interest in "tenure" as Director of Public Works because he never bargained to waive his right to tenure when the parties entered into the Settlement Agreement.  In particular, Plaintiff argues that he never waived his right to add the years of tenure he accrued between 1989 and 2000 to the years he accrued as Director of Public Works from 2005 to 2009.  Moreover, Plaintiff contends that the parties never addressed the issue of "what would happen upon his return" to the position of Director of Public Works when

---

[5] Plaintiff brought political discrimination and retaliation claims against all Defendants under Article One of the New Jersey Constitution.  In New Jersey, a plaintiff alleging violation of his or her civil rights under the New Jersey Constitution may bring a claim under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. 10:6-1 to -2, or the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1 to -49.  The New Jersey Civil Rights Act operates as an analog to 42 U.S.C. § 1983, and creates a cause of action under state law for violations of the New Jersey Constitution.  Hurdleston v. New Century Financial Serv., Inc., 629 F. Supp. 2d 434, 443 (D.N.J. 2009).  Similarly, the NJLAD prohibits employers from discriminating against employees based upon a list of recognized traits such as race, age, marital status, etc.  N.J. Stat. Ann. § 10:5-12.  However, neither the NJCRA, nor the NJLAD establish a cause of action for political discrimination or political retaliation.  The NJLAD does not refer to political affiliation, and Plaintiff points to no evidence that a cause of action exists for political discrimination or retaliation under the NJCRA.  Therefore, Plaintiff's political discrimination and retaliation claims fail as a matter of law.

they negotiated the Settlement Agreement. Defendants argue that Plaintiff's tenure rights are precisely what the parties bargained for when they agreed to settle. Specifically, Defendants assert that Plaintiff had a right to continued employment under N.J. Stat. Ann. § 40A:9-154.6, but waived that right by resigning under the terms of the Settlement Agreement.

The Court finds that because Plaintiff forfeited his property interest in the position of Director of Public Works by signing the Settlement Agreement on April 9, 2003, and Plaintiff does not have the statutorily required five years of service in the position of Director of Public Works, Plaintiff's due process claim fails. N.J. Stat. Ann. § 40A:9-154.6 provides:

> <u>A person holding office, position or employment as full-time municipal superintendent of public works who has held the office, position or employment continuously for 5 years or more shall continue to hold the office</u>, position or employment, notwithstanding he is serving for a fixed term, during good behavior and efficiency and shall not be removed therefrom for political or other reasons except for good cause, upon written charges filed with the municipal clerk and after a public, fair and impartial hearing; except that the governing body of the municipality shall first pass an ordinance authorizing the tenure of office herein provided. The person may be retired when he shall have attained 70 years of age.

(emphasis added). Pursuant to N.J. Stat. Ann. § 40A:9-154.6, the Washington Township enacted Ordinance 19-1984. Like N.J. Stat. Ann. § 40A:9-154.6, Ordinance 19-1984 also grants tenure to any municipal superintendent of public works who holds the position continuously for five years. Specifically, Ordinance 19-1984 provides:

> Any person holding the office, position or employment of full time Municipal Superintendent of Public Works continuously for five (5) years or more shall be tenured in the said office notwithstanding he is serving for a fixed term. <u>He shall not be removed from said office</u> for political or other reasons except for good cause shown and upon hearing.

Thus, based upon the plain meaning of both N.J. Stat. Ann. § 40A:9-154.6 and Ordinance 19-1984, a person who holds the position of Superintendent of Public Works for a period of five or more years has a property interest in continued employment in that position. See McKeever, 236 F. Supp. 2d at 405 (finding that N.J. Stat. Ann. § 40A:9-154.6 and Ordinance 19-1984 create a property interest in the position of Superintendent of Public Works for any individual employed for five or more years). That property interest consists of the right to remain in the tenured position subject to removal for good cause to be determined by an appropriate hearing.

Plaintiff was appointed Director of Public Works in June 1989, and held the position until 2000. After Plaintiff brought a lawsuit against the Township, the parties entered into the Settlement Agreement. Paragraph 1 of the Settlement Agreement provides: "McKeever acknowledges that his employment with Township ended effective January 1, 2001. He waives any claim or right to reinstatement." (Settlement Agreement ¶ 1) (emphasis added). Furthermore, Paragraph 18 of the Settlement Agreement provides:

> McKeever understands that the terms of this Agreement, including the fact that he has permanently and irrevocably severed his employment relationship and/or his alleged employment relationship with Township and that this Agreement releases forever Defendants from any legal action he may bring, including but not limited to, any action arising from his employment relationship and the alleged termination of his employment relationship with Township.

(emphasis added). Thus, under the clear language of the Settlement Agreement, Plaintiff completely severed his employment relationship with the Township, and, in doing so, forfeited the right to remain Director of Public Works. Consequently, on April 9, 2003, when Plaintiff voluntarily forfeited his right to continued employment with the Township, the statutory clock to tenure was reset and did not begin ticking again until he was reappointed in 2005. Unfortunately for Plaintiff, the clock stopped ticking four years later, when Mayor Lyons decided not to

reappoint him.  Because an employee must hold the position of Director of Public Works for a <u>continuous period</u> of five or more years before receiving tenure, Plaintiff had no property interest in his employment with the Township when Mayor Lyons decided not to reappoint him in 2009.

      Plaintiff's argument that he never bargained to forfeit the time he accrued towards tenure between 1989 and 2000 fails because N.J. Stat. Ann. § 40A:9-154.6 makes clear that "continuous" employment in the position of Director of Public Works only entitles an employee to the right to <u>remain in that position</u>.[6]  In effect, when the parties negotiated in 2000, Plaintiff's primary bargaining chip was his right to <u>remain</u> in the position of Director of Public Works.  N.J. Stat. Ann. § 40A:9-154.6 does not state that an employee who accrues five continuous years of employment in the position of Director of Public Works may voluntarily terminate his employment with the Township and then subsequently reapply his "vested" time towards tenure after reappointment to the same position.  Nor does Ordinance 19-1984 grant Plaintiff the right to aggregate time as Director of Public Works towards tenure.  The ordinance provides that "a person holding the office [of Director of Public Works] continuously for five (5) years or more shall be tenured . . . [and] shall not be removed from said office for political or other reasons except for good cause shown and upon a hearing."  Ordinance 19-1984.  Thus, neither N.J. Stat. Ann. § 40A:9-154.6 nor Ordinance 19-1984 grant Plaintiff a property interest in vested time as Director of Public Works.  Therefore, Plaintiff cannot argue that he has a right to the time he accrued towards tenure between 1989 and 2000 and that he did not bargain to forfeit that right.

      Because Plaintiff provides no basis for the argument that he may add previously accrued years to his current time spent in the position of Director of Public Works, Plaintiff's due process

---

[6] Indeed, in <u>McKeever</u>, Judge Rodriguez articulated the precise contours of Plaintiff's right to tenure.  Judge Rodriguez found that because "Plaintiff meets the requirements for tenure, he has established a property interest in his <u>continued employment</u>."  236 F. Supp. 2d at 409 (emphasis added).  There is no evidence in Judge Rodriguez's opinion that this right to "continued employment" also includes the right to add "vested" years to subsequent reappointment.

claim fails. Therefore, the Court will grant Defendant's motion for summary judgment on Counts Three, Four, Five, and Six.[7]

### B. Political Discrimination

In Elrod v. Burns, 427 U.S. 347 (1976), the United States Supreme Court held that terminating certain public employees based solely upon political affiliation infringes the First Amendment rights of association and belief. Id. at 349. Thus, "[e]mployees determined to hold jobs that do not have policymaking or confidential functions cannot be discharged on the sole ground of political beliefs." McKeever, 236 F. Supp. 2d at 409 (citing Elrod, 427 U.S. at 375 (Stewart, J., concurring)).

Political discrimination cases involve the same burden-shifting framework employed in other employment discrimination cases, including Title VII cases. Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997); Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993). In order to establish a prima facie case of political discrimination in a failure to reappoint case, a plaintiff must show that: (1) he worked for a public agency in a position that does not require a political affiliation; (2) he was engaged in constitutionally protected conduct; and (3) the conduct was a

---

[7] Because Count Three fails, Counts Four, Five, and Six also fail as a matter of law. Count Four alleges that Plaintiff "was not afforded a hearing as provided by law, but instead was summarily terminated." (Compl., at 7). Because Plaintiff has no property interest in tenure as Director of Public Works, Plaintiff is not entitled to a hearing prior to termination under the U.S. Constitution or the New Jersey Constitution. Count Five alleges that "Defendants did not seek revocation of [Plaintiff's] license but summarily terminated [Plaintiff] from his position" in violation of N.J. Stat. Ann. 40A:9-154.6f. (Id. at 9). N.J. Stat. Ann. 40A:9-154.6f provides a municipality with the authority to "revoke or suspend" a Director of Public Works for "dishonest practices or failure, neglect or refusal to comply with the Constitution of the State of New Jersey or the laws relating to local management of public works, or other just cause." However, this case does not implicate N.J. Stat. Ann. 40A:9-154.6f because Plaintiff's certificate was neither "revoked [n]or suspended"; rather, Plaintiff was not reappointed to the position of Director of Public Works. Moreover, as the previous analysis makes clear, Plaintiff had no property interest in employment as Director of Public Works when Mayor Lyons chose not to reappoint him in 2009. Therefore, the Court grants summary judgment on Count Five. Count Six alleges that Defendants terminated Plaintiff's tenure without a sufficient finding of cause after an appropriate hearing. This claim is also dismissed because Plaintiff has no property interest in continued employment with the Township.

substantial or motivating factor in the government's employment decision.[8]  Kerrigan, 122 F.3d at 176; Robertson, 62 F.3d at 599.  In order to satisfy the third prong of a political discrimination claim, a plaintiff must show that the defendant had knowledge of his political affiliation and that his political affiliation was the cause of his termination.  Kerrigan, 122 F.3d at 177-80.  "If the [plaintiff] demonstrates all three requirements, the employer may avoid a finding of liability by demonstrating by a preponderance of the evidence that it would have made the same decision even in the absence of the protected affiliation."  Robertson, 62 F.3d at 599.  After the employer offers a legitimate, nondiscriminatory reason for his decision, the plaintiff may prevail by "discredit[ing] that proffered reason, either circumstantially or directly, or by proving that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Wheeler v. Twp. of Edison, No. 08-2323, 2009 WL 1111542, at **3 (3d Cir. Apr. 27, 2009).

Finally, the First Amendment protects an employee's right to active affiliation with a political party as well as "failure to engage in any political activity whatsoever."  Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 273 (3d Cir. 2007).  Furthermore, "adverse actions taken against public employees merely 'to make positions available for political supporters' [can] amount to political discrimination."  Id. (citing Conjour v. Whitehall Twp., 850 F. Supp. 309, 317 (E.D. Pa. 1994)).

The parties do not dispute the finding in McKeever that the position of Director of Public Works does not require political affiliation.  236 F. Supp. 2d at 411 (citing Robertson, 62 F.3d at 599).  Therefore, the political affiliation requirement of Plaintiff's claim is satisfied.  Moreover, there is no evidence that Plaintiff engaged in political activity at the time he was replaced by

---

[8] The three-part test articulated in Kerrigan and Robertson v. Fiore, 62 F.3d 596, 599 (3d Cir. 1995), is applicable to failure to reappoint cases.  Zold v. Township of Mantua, 935 F.2d 633, 636 (3d Cir. 1991).

Mayor Lyons.  Because failure to engage in political activity is protected under the First Amendment, Plaintiff satisfies the second element of a prima facie case.  <u>Galli</u>, 490 F.3d at 273.

However, the parties dispute whether political affiliation was a substantial or motivating factor in Mayor Lyons's decision not to reappoint Plaintiff to the position of Director of Public Works.  Plaintiff argues that the evidence in the record leads to the inescapable conclusion that Mayor Lyons did not reappoint Plaintiff because of his political affiliations.  In support of this conclusion, Plaintiff offers the following circumstantial evidence:  (1) Defendants did not solicit applications from the general public for the position of Director of Public Works through newspapers or other commonly used modes of communication; (2) Plaintiff's replacement, Mr. Pileggi, is not a Certified Public Works Manager; and (3) Mr. Petroni, a financial contributor to Mayor Lyons's campaign, sponsored Mr. Pileggi's candidacy.  Defendants argue that Plaintiff offers no evidence that Mayor Lyons did not reappoint Plaintiff because of his political affiliations, and the record makes clear that Mayor Lyons selected Mr. Pileggi because of his business experience and financial training.

Plaintiff fails to offer evidence upon which a reasonable jury could conclude that political affiliation was a substantial and motivating factor in Mayor Lyons's decision not to reappoint him.  The record demonstrates that Mayor Lyons chose a candidate for the position of Director of Public Works based upon his specific needs, and his assessment of three candidates; not Plaintiff's political affiliations.  Mayor Lyons articulated two important qualifications he desired in a candidate seeking the position of Director of Public Works:  business experience and financial training.[9]  During his decision-making process, Mayor Lyons evaluated three

---

[9] Indeed, Plaintiff acknowledged that the Director "assist[ed] the Mayor in budgeting" and was responsible for submitting a budget to the Mayor with the assistance of the Business Administrator.   (Lyons and McKeever Dep. 78:13 – 24, June 7, 2010).

13

candidates to determine whether they matched those criteria. After examining Mr. Pileggi's background and experience, Mayor Lyons determined that he possessed the qualifications necessary to fill the position. In addition, Mayor Lyons spoke with Jack White, Mr. Pileggi's former co-worker, who confirmed that Mr. Pileggi was a good administrator and supervisor.[10] Thus, after considering Mr. Pileggi's qualifications and vetting other candidates, Mayor Lyons chose Mr. Pileggi because he believed that he possessed the qualifications necessary to fill the position of Director of Public Works. On the other hand, Plaintiff lacked the credentials Mayor Lyons sought in a candidate. The record demonstrates that Plaintiff lacked financial training and business experience. Therefore, Plaintiff's argument that Mayor Lyons selected Mr. Pileggi based upon Plaintiff's political affiliations is without merit. See Wheeler, 2009 WL 1111542, at **4 (granting defendant summary judgment on political discrimination claim when plaintiff failed to demonstrate that he was more qualified than other similarly situated candidates).

     Plaintiff's counterarguments are unavailing. First, the fact that Defendant did not solicit the position of Director of Public Works in the local newspaper does not create a material issue of fact concerning Mayor Lyons's motive for hiring Mr. Pileggi. Although Mayor Lyons did not solicit the position broadly, there is no evidence that he did not consider other candidates or that he excluded Plaintiff from consideration because of his political affiliations. Second, the fact that Mr. Pileggi is not a Certified Public Works Manager also does not create a material issue of fact. Although it is true that Mr. Pileggi was not a Certified Public Works Manager, the evidence demonstrates that Mr. Pileggi possessed other credentials that made him a suitable candidate for

---

[10] The general rule in the Third Circuit is that hearsay is not to be considered on a motion for summary judgment. Shelton v. Univ. of Medicine & Dentistry of New Jersey, 223 F.3d 220, 223 (3d Cir. 2000). However, Mayor Lyons's testimony regarding his conversation is admissible because it is not hearsay under Federal Rule of Evidence 801(c). Rule 801(c) provides that hearsay "is a statement . . . offered in evidence to prove the truth of the matter asserted." Here, Mr. White's statements to Mr. Lyons are admissible as statements to prove that Mr. Lyons spoke to Mr. White prior to hiring Mr. Pileggi – not that Mr. Lyons is actually a good supervisor and administrator. Therefore, Mr. White's statement is admissible evidence which this Court may consider on a motion for summary judgment.

the position of Director of Public Works.  In particular, Mr. Pileggi had an undergraduate degree in business administration, and experience as Business Administrator for Monroe Township, New Jersey and CFO/General Manager of Riverwinds.  See Fitzpatrick v. Reinhart, No. 08-3218, 2010 WL 4683613, at *7 (C.D. Ill. Nov. 10, 2010) (granting defendants summary judgment in political discrimination suit where defendant employer hired candidate despite plaintiff's objections concerning candidate's qualifications).

Moreover, although Mr. Pileggi did not possess a Certified Public Works Certificate at the time of his appointment, he was a Certified Public Manager.  This is significant because many of the courses necessary for a Public Works Certificate are substantively the same as the courses required to become a Certified Public Manager.  In fact, on September 18, 2009, an Associate Program Specialist for Rutgers University informed Mr. Pileggi that the school would waive all but four courses required for him to complete the Certified Public Works Program.  (Letter from Connie Burke to Mr. Nicholas Pileggi, Sept. 18, 2009).

Third, no reasonable jury could find that Mr. Petroni's involvement in Mr. Pileggi's appointment to the position of Director of Public Works proves that Mr. Pileggi's appointment was motivated by political affiliation.  The record shows that Mr. Petroni asked Mr. Pileggi whether he was interested in the position of Director of Public Works, and, that Mr. Petroni was a major contributor to Mayor Lyons's campaign.  However, these facts alone do not prove that Mr. Petroni actually influenced Mayor Lyons's decision-making process.  In fact, there is no evidence that Mr. Petroni encouraged Mayor Lyons to appoint Mr. Pileggi to the position of Director of Public Works or exerted any influence over Mayor Lyons's decision-making process.[11]  Thus, Plaintiff's contention that Mr. Petroni influenced Mayor Lyons's decision

---

[11] The parties dispute whether Mr. Petroni, Mr. Pileggi, and Mayor Lyons met to discuss Mr. Pileggi's candidacy.  Plaintiff alleges that the three men met at a diner sometime in mid-November.  (Pl.'s Opp'n Br., at 11).  Defendants

amounts to pure speculation and conjecture.  In the Third Circuit, mere speculation and conjecture cannot form the basis of an actionable claim of political discrimination.  See Contini v. Cranmer, 117 Fed. App'x 186, 190 (3d Cir. 2004) ("We have repeatedly emphasized that a plaintiff in a political affiliation discrimination case may not rely upon mere speculation and conclusory assertions to establish that a discharge was politically motivated . . . .") (citing Liotta v. Borough of Springdale, 985 F.2d 119, 122 (3d Cir. 1993); Laskaris v. Thornburgh, 733 F.2d 260, 265-66 (3d Cir. 1984)).  Therefore, Plaintiff's political discrimination claim fails.

In sum, because the evidence does not create a genuine issue of material fact concerning whether Mayor Lyons's decision not to reappoint Plaintiff was motivated by political affiliation, Plaintiff's First Amendment claim fails.  Accordingly, the Court grants Defendants summary judgment on Count One.

### C. The Petition Clause

The Petition Clause of the First Amendment provides that there shall be "no law abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.  The Supreme Court has held that "an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997).  To prevail on a retaliation claim under 42 U.S.C. § 1983 predicated on the First Amendment, a plaintiff must show:  (1) he was engaged in a protected activity; (2) the defendant's retaliatory action was sufficient to deter a person of ordinary fitness from exercising

---

argue that the three men never met together, and instead claim that Mayor Lyons met Mr. Pileggi alone.  (Defs.' Reply Br., at 19).  However, even if all three men were present at the meeting in mid-November, no reasonable jury could find that Mr. Petroni's presence at the meeting creates a material issue of fact regarding whether Plaintiff's political affiliations were a motivating factor in Mayor Lyons's decision-making process.  As previously mentioned, the record is devoid of any indication that Mr. Petroni actually influenced Mayor Lyons's decision-making process in a formal or informal manner.  Therefore, Plaintiff's political discrimination claim fails.

16

his or her rights; and (3) that there was a causal connection between the protected activity and the retaliatory action. Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Under the third prong of a prima facie case, in order to prove the requisite causal connection, a plaintiff must demonstrate: "(1) an unusually suggestive temporal proximity between the protective activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Id. "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Plaintiff argues that Mayor Lyons did not reappoint Plaintiff to the position of Director of Public Works in 2009 in retaliation for Plaintiff filing a lawsuit against the Township in 2001. Defendants argue that Mayor Lyons did not reappoint Plaintiff to the position of Director of Public Works because he lacked business experience and financial training, and that the sole evidence Plaintiff offered to prove that Mayor Lyons retaliated against Plaintiff for filing the lawsuit is a mischaracterization of the Mayor Lyons's actual statement on the record.

Plaintiff's petition claim fails because no reasonable jury could find that Plaintiff's lawsuit was the cause of Mayor Lyons's decision. Plaintiff fails to offer any evidence of an unusually suggestive proximity between a protected activity and his release, or a pattern of antagonism prior to Mayor Lyons's decision. Instead, Plaintiff offers a statement made by Mayor Lyons during a meeting concerning Mayor Lyons's reason for not supporting his bid to become Director of Public Works in 2005. When asked whether he did not support Plaintiff's appointment in 2005 because Plaintiff filed a lawsuit against the Township, then-councilmember Lyons replied "I believe that was part of it, yes, but it was specific to the involvement of the entire [sic] and how the litigation was concluded, not for the institution of the suit, it had to do

17

with the terms of the agreement of resolution." (Lyons and McKeever Dep. 28:1-16, June 7, 2010). Based upon this statement, Plaintiff argues that Mayor Lyons's voted against his reappointment because of the lawsuit Plaintiff filed in 2001.

Plaintiff misconstrues Mayor Lyons's deposition testimony. The evidence in the record makes clear that Mayor Lyons did not support Plaintiff's appointment in 2005 because he was uncertain whether the Settlement Agreement guaranteed Plaintiff tenure upon reappointment to the position of Director of Public Works; not the fact that Plaintiff brought a lawsuit against the Township. As Mayor Lyons stated in his deposition testimony and confirmed in his sworn affidavit, he did not support Plaintiff's reappointment because he was "concerned whether terms of [the Settlement Agreement] . . . would entitle [Plaintiff]/preclude [Plaintiff] from being a 'tenured' employee per N.J.S.A. § 40A:9-154.6 upon [Plaintiff's] confirmation as the Director of Public Works." (Lyons Aff. ¶ 4). Thus, contrary to Plaintiff's assertion that "Lyons . . . voted against rehiring [Plaintiff] because of his suit against the Township," (Pl.'s Opp'n Br., at 24), the record demonstrates that Plaintiff's lawsuit had little or nothing to do with Mayor Lyons's decision.

Moreover, the other evidence in the record belies Plaintiff's claim that Mayor Lyons sought to retaliate against him. Mayor Lyons stated that he wanted a candidate with business experience and financial training to fill the position of Director of Public Works. Plaintiff lacks business experience and financial training. Plaintiff's replacement, Mr. Pileggi, has a business degree from LaSalle University and experience as CFO/General Manager of Riverwinds. Therefore, contrary to Plaintiff's assertion that Mayor Lyons did not reappoint him because he filed the lawsuit against the Township, it is evident from the record that Mayor Lyons did not

appoint Plaintiff because he simply lacked the credentials Mayor Lyons was looking for in a candidate for Director of Public Works.

In sum, because the record lacks evidence upon which a reasonable jury could conclude that Mayor Lyons retaliated against Plaintiff by not reappointing him, Plaintiff's Petition Clause claim fails. Therefore, the Court grants Defendants summary judgment on Count Two.

### IV. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED, and Plaintiff's cross-motion for summary judgment is DENIED. An appropriate order shall issue today.


Date: 1/7/2011  /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge